May it please the court my name is Bill Keller I represent 33 former employees of Washington Mutual Bank and this court is probably aware this case started out with 120 plaintiffs took three years for a judgment on the pleadings had no discovery it certainly wasn't the streamlined process that this court has previously stated that the receivership is about and what it says the resolve many claims against failed institutions without unduly burdening the courts and that was the Henderson vs. Newman Bank well that didn't happen here and I'll tell you why what happened here is the claimants all had change control agreements they signed them they lived up to their agreements they show up to work on Thursday they work the very next day they show up and they've JP Morgan Chase being their their new employer directing them they didn't stop working they kept moving they did everything that they they possibly could they thought hey this is okay we still got our change of control agreements they're pretty clear that no matter how this bank is transferred whether voluntary or involuntarily we still have our change of control agreements so we can rely on that well then they finally read the purchase and sale agreement they find out wait a minute the FDIC and JP Morgan Chase decided that Chase doesn't have liability for this this will stay with the FDIC and so begins the process of the administrative process where we followed claims with the FDIC and the statute 12 USC 1821 D for the claims process is pretty clear and this court has has upheld this statute as being unambiguous against claimants routinely most recently in the case I believe it was Hanson or Benson versus JP Morgan Chase just in 2012 673 f3rd 1207 this court again upheld the clear language relating to statute of limitations also clear language to who you need to bring the suit against all these things the statutes been very very clear now each of the claimants followed the statute to the letter they filed their claim and this statute says that the FDIC also has certain things that it must do among them it must decide the claim within 180 days has 180 day window that's six months it's plenty time to decide a claim if they think they need more time they can discuss that with the claimants and try to get an extension that's that's provided for in the statute the second thing that they're required to do and this is not may do it it shall do if we're gonna if we're going to take statutory construction and read the language it says they shall do this and that requires them to give the reasons for why they're going to deny claims and that's where they failed here now have they done this correctly and given the reasons why the claims were denied maybe we would have that streamlined process and avoid bringing these claims to the district court and and burdening the process and being here four years later are arguing over things but instead of following the statute what they did is they gave a whole host of reasons that didn't make any sense first it was not a change of control they gave a couple of reasons that my clients looked at their change of control agreements and said well these are just these are out of whack these are wrong so we can go forward and then later they came for some people they just said these are overly burdensome we're just gonna repudiate the contracts and that was well over seven months after the claims have been made and once so looking at the the law there they said well wait a reasonable time we should be able to go forward with our claims so each of the claimants then brings their lawsuits and it's some of the complaints were very simple like the ones I brought on on behalf of my clients were very short complaints just a quick breach of contract here's this change of control agreement here's what it says we should win the what the FDIC said in defense wasn't wasn't reasonable at the administrative level but as we go we get into litigation and the FDIC brings completely new defenses they didn't follow the statute they didn't tell us what the reasons were they've been completely new regulations and they say to the court you need to take this regulation and you need to take the strict words and apply that to these contracts in fact you need to write it into these contracts and by writing it in you have had that actually been written into the contracts they would have been conflicting you would have had a contract that says you change of control occurs on an involuntary transfer and then on the next sentence you would have had well the change of control occurs in a military involuntary transfer but if it's if it's seized which is an involuntary transfer it doesn't apply that would have conflicted it would have made them think and maybe not continued working with the bank they could have thought about that and said we're not gonna waste our time here everybody knew that the bank was in a little bit of trouble they could have could left but they relied on the statute they relied on their agreements and so now it's time you're saying that if they if the provisions of the regulation had been written into the contracts that the your client and the others a 12 CFR 563 39 might have said I'm not I'm not working for certainly not certainly not the ones that came in a couple months before this and had relocation agreements and everything else that were in part of this and said hey we're gonna come work for Washington Bank it could be a little bit of financial trouble but I'm gonna stick it out something to get this the severance but when you if you actually put that stuff in there you could read the contract it wouldn't make a lot of sense maybe you would have a better bargaining power that didn't happen here and so when we're this regulation actually says that employment contracts shall include these provisions and see that gets back that gets back the point what the FDIC says a shell should mean something here but it shouldn't mean something when we're in the administrative process and that's getting back to our point when they're supposed to give us the reasons why the claims are denied and they don't then they should have waived those defenses why did they get an enforce a statute on us later down the road when they've already violated a statute by not giving the reasons that that's really what it what it gets down to that's what boils down in our argument the situations where a private party can get some estoppel against the government are pretty narrow under case law but you you think this case comes in that category absolutely absolutely if they had followed the statute we could have relied on it they didn't they didn't follow any of the statutes how do you if I could ask you one question and I guess I'll ask the same question to the government in there are you how does our case of mud mud lots of loose key I think it's pronounced how does that apply here or you know because I even if you claim it's the case is wrong the three judge panels bound by it unless it's distinguishable so well you that absolutely I will tell you obviously this thing got briefed up and down at the district court level I think we've been over all of it I guess what I would tell you my position on it today is that you know we've read the statute I know what the Ninth Circuit says on it but where we distinguish it on is in our case you know for the FDIC to actually have that type of defense to actually be able to bring that defense against our claims they should have had to comply with the administrative statute 1821 d5 and so if Congress says you are supposed to comply with this we don't get a second guess that they didn't do it they don't want to do it they said they don't have to do it the district court has now said well you know Congress must must not have meant for them to do it but there's no evidence of that the fact is what Congress said about the receivership statute is this supposed to be it's supposed to be used so we don't burden the courts with this stuff that's why you have the administrative process to begin with and they didn't follow it they've just decided that it's meaningless to us and so now we're here and we're at this at this archaic regulation that you know obviously none of us knew about and none of the claimants knew about where would you you know find it to begin with well you would have known about it if they followed it but if they had put it they had put this in the contracts the regulation that they're relying on basically says it has to be explicitly stated in the contracts and it wasn't and had it been you say the contracts would then be internally inconsistent but at least your clients would have been on notice as to what they might be buying into what absolutely they would have at least a chance to do some more bargaining leave all together make that choice make make an informed choice decide not to spend money pursuing claims it's real easy to get you know when you look at the denials of the FDIC is no reason we had a there's a reason we had 120 plaintiffs hop into court they said what my contract says change of control these guys says no change of control occurred that under the direct terms of the contract taking out that regulation it absolutely occurred I think that would occur when it would have it would have occurred in when the when the bank was seized and transferred so that that's when that would have been the change of control cease-transfer they lose their jobs there do we have to deal with I guess it's a fiction or presumption that people know what the law is if if this is spelled out in the code of federal regulations do we have to view it as if your clients are aware of it you know whether they are not I wait that's something I guess I wasn't prepared to answer but I would say in this type of situation where they're dealing with the FDIC I mean it's an F the FDIC is regulation they they want to they're the ones that want to enforce it they're the ones that should have informed them of this in the administrative process I mean they're the ones that give a claims form to these people and say hey you might have a claim under this contract file you your claim with us they do that's when the FDIC should have said there's a regulation or if the regulation was was there should have told them before they even did the claims process could have saved him a lot of time but as it was you see you have a purchase and sale agreement that clearly spells out that Chase isn't taking the liability for change of control and change of control stays with the FDIC didn't say in their you know one hour bargain for sale it didn't say we're going to change of controls don't matter because once it's seized they're null and void because they didn't want that to happen what they wanted was to keep these employees working the very next day so they could make the transition from Washington Bank to Chase without any hiccups and they did they didn't tell anybody hey by the way come to work but just so you know you've got no security you should we fire you tomorrow you don't get your change of control you don't get your severance you don't get you know any of your accrued vacation you don't get any of the stock benefits that they didn't tell them that they've said everything's the same you come on back to work the very next day they close the bank at 5 p.m. on Thursday they're open for business 8 on Friday and everything's just the same let me I just want to be sure I understand what this case is about you're spending a lot of time talking about the failure to comply with 12 USC 1821 but there's a lot in the briefs about when your clients rights vested that's a separate point from your 1821 point isn't it well yeah I guess the first I think 1821 has to come has to come first I mean if they didn't comply with the statute and but let's assume for whatever reason we disagree with that or I mean the the point to me is is an important and separate point and you seem to have inconsistent arguments or a number of different theories and when you say your rights vested and in I guess the question is what exactly is your position and when you're right vested in what law do you have to support you well I the position there were several inconsistent positions down below one because we didn't have any discovery so there's a lot of things we didn't really know about there was a previous I think in the briefing down below there was some talk of some purchase and sale or private equity going on in April I didn't have any information on that we didn't have any discovery so we couldn't really follow that that premise our position in the briefs was that the the triggering event was was on the seizure once I mean you know they closed business then it's then it's seized and you know the next day somebody else's has taken over I mean that is when we would would assume was be the the vesting point that's when your rights vested yeah and so that that's why when we look at this case we go we bring it back to 1821 is being that that Mods Voluski case said that you had to have a vested right before the seizure well maybe I'm all of our employees in claimants had you know met their met all their obligations under the contract before the before the seizure I mean certainly they'd they'd done it they'd complied with everything they had to do the triggering event though is there has to be a transfer so or a sale of schools point is that the Mods Voluski case which all of us are having trouble pronouncing I think says it's your rights have to have vested the day before the triggering event or the day before the seizure well I mean what you would do I guess you would say like in discovery what we would have tried to find out which is one of the reasons is important is under normal circumstances you would have the OTS would give some notice to the bank you know that hey there's some trouble you could be seized and and then the employees would of course know this would be public record naked they could make do with this that kind of thing but it's just the opposite in the real world it's just the opposite in the real world you wouldn't give anybody notice that this thing is about to happen because it could affect depositors it could affect investors but you you want to get it done problem they had met their cash call that that was the thing that this was it was a surprise to everybody I think my clients would tell you that the seizure maybe into that they would tell you that the seizure was completely wrong but well that's another lawsuit what's up that's another lawsuit yeah that well that would be another lawsuit for sure oh I see my time is your time's up but we've engaged with a lot of questions and it's important case we'll give you two minutes for rebuttal okay if I need that act afterwards so that you can respond to the government good morning may please the court my name is Jacqueline Tanner and I represent the FDIC in this appeal the district courts ruling as the court is indicated is a straightforward application of controlling law in the circuit the Washington Mutual Bank of course was a thrift it was heavily regulated its employments agreement employment agreements were subject to and governed by the regulations that section 563.39 under those regulations the employment agreements terminated automatically when the bank was seized for another number of other triggering events also but the bank seizure was one of them and the only rights that survived were those that were already vested this court has considered the issue the vesting issue in two prior appeals both Modulowski and then later Aronson and in each case the court interpreted the vesting language to mean that the employee must be must have been entitled to force payment or demand payment the day before the bank seizure those conditions obviously weren't met here there was no vesting Aronson also relied on an alternative ground also which the court didn't have didn't need to go any further to address that but the regulation also requires that the Board of Directors of the thrift specifically approved the agreements and below and I think we cited to the record page page 514 the employees below actually affirmatively argued that there had been no such specific approval and under Aronson that again would make there any rights aside from the vesting issue unenforceable kinds of provisions for payments when there's a change are they common in in these in thrift in the thrift industry or I assume they are because we sit in 1996 the FDIC put in place regulations that specifically make change in control unavailable if it's as a result of change of control payments unavailable if if they're made as a result of the seizure the appointment your failure of the bank and the rest is there any any authority that that they would be applicable even in the face of a failure of the bank well I think Modulowski itself addressed that issue and and the the court pointed out the the incongruity of basing payment on a trigger triggering event that itself automatically terminated the contract I was just wondering if there was any contrary authority to that not that I'm aware of I don't the the regulations again since 1996 preclude payments based on on the failure of the bit payments to employees based on the failure of the bank specifically mentioning changing control I could interject a question on this you know I might be misunderstanding this but it seems to me that if in the administrative claims process the government had given the claimants notice that you are out of luck under 10 CFR 563.39 B and in the Ninth Circuit's opinion in Modulowski you know maybe there'd be no issue for our panel just for in bank panel but what what about the argument that's advanced by Mr. Keller that the FDIC didn't follow the statute to give notice of well reasons for the disallowance we would disagree strongly the each of the disallowance letters gave reasons the in fact one of them that's in the record at page 541 cited did cite the the regulation one out of one the only the only samples that we have in the record of those that were provided by you know that were put together by the employees but at least one we know at least one cited that reg and but what about the fact that the but the reg itself says that each employment contract itself should explicitly include these provisions including the b4 and b5 provisions that rely on now I don't think that that provision of the regs helps the employees because the failure to include it unless it's read into the contract the way that as the district court did would actually make the whole the whole employment agreement unenforceable but he's saying if it had been written into their contract and if employer it says them were required by the FDIC to include these provisions in employment contracts some of them would have said well we don't want to work here then well there are a lot of problems with the way Washington mutual bank was run the that we can take judicial notice certainly there was no there was no board approval there was no reference to the regulation it was a can I ask about this 812 you'll see 1821 because mr. Keller spent a lot of time on that is it at the end of the day is your position that that statute doesn't even apply because this is a thrift and that it doesn't apply to thrifts and savings are you referring to the the claims process the claims process that he's talking about you had to make this decision with the next number of days and you know the claims process does apply because the FDIC was the receiver or is the receivers for Washington mutual bank and all claimants against the assets of that receivership would have to comply with the claims process okay so what what our point is that there's really no consequence that there there can be no consequence here for the failure to refer to this really weren't these Center first of all they're not the same reasons that you gave in the district court and they're not the reasons that you're relying on here and they're not really the centerpiece of what really happened here which is 563 point 39 that wasn't stated in most of these letters yes that's true but the the issue then becomes what do you do with that right if the FDIC could have failed to respond to these claims entirely and just let the 180 day lap the 180 days laps and given the fact that the statute at 1821 d5e I believe it is says that there can be no judicial review of the actual disallowance it's all a de novo judicial determination it really it there's no consequence and as long as the FDIC gave a reason and and I would direct the court's attention to the Aronson case which is instructive because in that case the district court relied on a on a grounds wholly separate from five is from from the regulation at 563 point 39 which which wasn't even at issue before then and and the Court of Appeals was the Court of Appeals did rely on that regulation because it was the law and it's it's the law here there can be the the that regulation just simply precludes as a matter of law payments to thrift employees based on the seizure of the of the institution it's that that's very straightforward the the district court followed the law there's really no ground for either an estoppel claim or claim based on 1821 D that statute was followed the review in the district court was de novo and all sides were free to raise whatever argument they chose in support of their position and to apply in the court properly applied the law just as a matter of curiosity why would it be if the record shows this that the regulators I guess their OTS regulators were in Washington Mutual you know looking through files would not notice that there's this large number of level managers who have payment on change of control provisions in their contracts that don't have the language in them that the regulation says should be in there I really can't speak for the OTS the OTS as you know and no longer is out of out of business now and thrifts are now regulated by the OCC and the employment agreement regulations are now consistent between thrifts and banks so the record doesn't tell us why the regulators didn't catch this but you would say it doesn't make any difference I mean the law I mean the bottom line is the law is the law and that's what the that's what the district court applied and as as the court has recognized this is a panel decision that that remains good law and there's no basis for overruling it in this case unless there are further questions I'll conclude no further hearing none I think the government can rest its case and we'll ask mr. Keller to come back we're giving you an extra two minutes we're about a large I'll be brief I as counsel said that the law is the law yet what they've just told you is that the law makes no difference and that they don't have to follow it because the statute is clear they have to give the reasons not a reason they have to give the reasons they're denying a claim and they didn't do that but she also said putting the worst case and what she said and giving you the benefit of the doubt here she also said okay we didn't follow the law but there's no consequence because the regulation is the regulation so what is the consequence of the failure for them to procedurally follow the law if we agree with them and disagree with you on the vesting point well I think the consequence needs to be that there if they didn't raise the defenses to these contracts they've waived them I think that's got to be the only answer you know there's consequences to not not following it what else what else could there be I mean they said that well they could just ignore it all together and do nothing but we can't ignore it if they did nothing for 180 days we couldn't sit there and say we recover we have to actually continue to follow the statute which says even if they didn't notice they also said that the claim in the district court reviewed to Novo so that whatever well they might have said in the claims process isn't relevant to that well I don't believe the statute says that that that the process is but what the statute does say is there's a couple of options you could also continue the administrative process if the FDIC agrees to it and which is why they're supposed to tell you in their notice of denial how you seek judicial review well unless they say you can file suit what they've done is turned it made the whole administrative process a mockery they've said we don't have to answer anything correctly and then you can go sue us later after you comply with this stuff you comply and hopefully you don't step on a minefield no we can have a redo or in the district court that's completely unfair to the claimants because they they can't say I get a redo if I miss the deadline so what's good for the goose is what's good for the gander thank you thank you mr. Keller the case of Williams versus FTC shall be submitted thank counsel for their argument and we'll also thank miss Tanner for traveling from Virginia to until tomorrow I traveled from Virginia to thank you yeah well we'll thank judge Friedman
judges: Friedman, Schroeder, Gould